# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| FORREST E. HARRIS, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 4:17-CV-2617 PLC |
| | ) |
| CORIZON, LLC, ET AL., | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

Plaintiff Forrest Harris, a Missouri prison inmate, brings this action pursuant to 42 U.S.C. § 1983, claiming that Defendant Corizon, LLC, the contracted medical provider for the Missouri Department of Corrections (MDOC), was deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. More specifically, Harris alleges that Corizon denied him medical care for his cancer, back pain, gout, and neuropathy. Corizon moves for summary judgment on Harris's section 1983 action. [ECF No. 46] Harris opposes the motion. [ECF No. 56]

**I.   Background[1]**

In early 2012, Harris was diagnosed with large B-cell lymphoma and underwent a surgical resection of a right retroperitoneal malignant mass in his abdomen. [ECF No. 47 at ¶¶ 3-4] Harris completed chemotherapy in July 2012, at which time his cancer was in remission. [Id. at ¶ 5] At Harris's December 2014 follow-up appointment at Siteman Cancer Center, his

---

[1] The facts are taken from Corizon's statement of uncontroverted material facts [ECF No. 47], as admitted in Harris's response to Corizon's statement of uncontroverted material facts [ECF No. 55], and the medical records Corizon submitted in support of its motion for summary judgment. [ECF No. 48].

physician noted that Harris's "risk of recurrence at this point is now 10% or less…." [Id. at ¶ 8, ECF No. 48 at 447]

Harris was arrested and confined to the St. Louis City Justice Center (CJC) on August 1, 2016. [ECF No. 47 at ¶ 9] Three days later, Corizon physician Dr. Fuentes evaluated Harris, noted his history of cancer treatment, and prescribed naproxen. [ECF No. 47 at ¶¶ 10-12] On August 9, Dr. Fuentes ordered Harris gabapentin for leg pain. [ECF No. 47 at ¶ 13]

On August 10, 2016, Dr. Fuentes received Harris's medical records from Barnes-Jewish Hospital and Corizon's staff drew Harris's blood for testing. [Id. at ¶¶ 14-15] In the following weeks, Harris submitted several medical service requests (MSR) asking for pain medication. [ECF No. 48 at 99, 100, 103] Dr. Fuentes examined Harris on September 16, ordered blood work, and requested an off-site clinic consultation. [ECF No. 47 at ¶ 17] At Harris's next appointment on October 20, Dr. Fuentes noted Harris's back and foot pain, prescribed ibuprofen, and informed him that he would see an off-site oncologist with BJC Healthcare. [Id. at ¶ 18, ECF No. 48 at 21]

Harris visited a nurse practitioner at Siteman Cancer Center on October 26, 2016. [Id. at ¶¶ 22-23, ECF No. 48 at 325-26] Harris complained of "decrease in short-term memory and concentration as well as intermittent episodes of disorientation" and "intermittent falls." [ECF No. 48 at 325] The nurse practitioner ordered blood work and a head CT, which revealed a "small contrast lesion in the pons that may represent a vascular malformation," and the radiologist recommended an MRI. [Id. at 160, ECF No. 47 at ¶ 25] Harris's brain MRI, performed on February 7, 2017, was normal. [ECF No. 47 at ¶ 30]

On January 19, 2017, a nurse refilled Harris's acetaminophen with codeine and, on January 23, Dr. Fuentes ordered Harris acetaminophen with codeine, naproxen, and meclizine

2

HCL.  [Id. at 17]  When Dr. Fuentes saw Harris on February 16, he complained of head and neck pain, and she prescribed ibuprofen.  [Id. at ¶ 32]  Dr. Fuentes examined Harris and treated his chronic pain and bilateral pedal edema in March, April, and May 2017.  [ECF No. 48 at 11-14]

On June 20, 2017, Harris submitted an MSR reporting that he had been out of pain medications for four days.  [Id. at 69]  Seven days later, Harris saw a nurse, who ordered acetaminophen with codeine.  [Id. at 11]  In early August, Dr. Fuentes and her staff ordered Harris naproxen and acetaminophen with codeine.  [Id. at 9]  When Dr. Fuentes examined Harris on August 18, she noted he "continues to have neck pains shooting to the head and lower spine for 1 month associated with dizziness." [Id. at 8]  Dr. Fuentes ordered meclizine, acetaminophen with codeine, and x-rays of Harris's cervical spine.[2]  [Id.]  In September 2017, Harris saw a nurse for vertigo.[3]  [ECF No. 48 at 7]

Dr. Fuentes examined Harris on October 11, 2017, noting his complaints of "dizziness recurrent for 2 weeks with headaches." [Id. at 6]  Dr. Fuentes ordered a diagnostic panel, after which Corizon staff informed Harris that he had high cholesterol, did not have gout, and there were no problems with his lab results.  [ECF No. 47 at ¶ 40]  Harris continued receiving acetaminophen with codeine in November 2017.  [ECF No. 48 at 5]

The MDOC transferred Harris to the Eastern Reception, Diagnostic and Correctional Center (ERDCC) in early December 2017.  [ECF No. 47 at ¶ 42]  On December 6, Harris complained to a Corizon nurse of a severe headache and back pain, and she prescribed acetaminophen.  [Id. at ¶ 44]  The following day, Harris saw Dr. Rhodes via telemed and

---

[2] X-rays performed on August 23 revealed mild degenerative changes and bony spondylotic changes without acute compression fracture or destructive process.  [ECF No. 47 at ¶ 36]
[3] In August and October 2017, Harris submitted MSRs asking to go to the hospital to "get this IBC [sic] Filter out of my chest" and "to check this mass out in my neck." [ECF No. 48 at 57, 61, 63-65]

3

informed her that he was diagnosed with lymphoma in 2012 and experienced a "recurrence 5 mo ago[.]" [Id. at ¶¶ 45-46, ECF No. 48 at 127] Dr. Rhodes reviewed Harris's prior lab and x-ray results and assured Harris that there was "no sign of Hodgkins recurrence or other significant abnormalities." [ECF No. 48 at 127] Dr. Rhodes ordered Harris placed in Corizon's chronic care clinic for cancer ("cancer clinic").[4] [ECF No. 47 at ¶ 47]

On December 30, 2017, a doctor with the cancer clinic examined Harris, noted no palpable masses or lymphadenopathy in Harris's abdomen, prescribed acetaminophen, and stated "we need to get his medical record as soon as possible and proceed further to refer to hematology oncology." [ECF No. 48 at 131-33] In mid-January 2018, Harris saw Corizon's medical director, Dr. Duberstein, in regard to right-sided chest pain, neck and upper back pain, lower extremity neuropathy, and difficulty recalling words and names. [Id. at 139] Dr. Duberstein prescribed gabapentin, tramadol, Tylenol, aspirin, and "knee high TED hose to be worn daily while out of bed," and she scheduled a follow-up appointment in two weeks. [Id.] At the follow-up appointment, Harris reported that his pain and sleep had improved, and Dr. Duberstein enrolled him in Corizon's chronic care clinic for chronic pain ("pain clinic"). [Id. at 140-41] Lab work performed later that month did not reveal a recurrence of cancer. [Id. at 142]

Harris saw nurses on March 19, March 29, April 12, 2018 and he continued to receive acetaminophen and ibuprofen. [Id. at 232, 235-36, 238-39] On May 14, Harris presented to Dr. Zakroff at the pain clinic. [ECF No. 47 at ¶ 69] Harris informed Dr. Zakroff that he was "mainly concerned about his cancer today" and complained of headaches, back pain, memory problems, and right-sided chest pain after lying on his right side. [[ECF No. 48 at 247-48] Dr.

---

[4] According to the affidavit of Dr. Zakroff, a Corizon doctor at ERDCC, Corizon's chronic care clinics "serve to treat patients with chronic medical conditions and ensure that such patients are automatically scheduled for regular doctor or nurse practitioner appointments at regular intervals." [ECF No. 47-1 at ¶¶ 3, 6]

4

Zakroff renewed Harris's order for gabapentin and scheduled a follow-up appointment in the cancer clinic.  [Id. at 252, ECF No. 47 at ¶ 72]

In June 2018, Harris presented to Dr. Wilkins, complaining of lower back pain, "black outs," and memory problems.  [No. 48 at 256]  Dr. Wilkins prescribed acetaminophen, ordered lumbar spine x-rays, and recommended "low back pain exercise."[5]  [Id. at 257-58]

One week later, Dr. Zakroff discussed Harris's medical records and cancer treatment history via telephone with Corizon's consulting oncologist, Dr. Kosierowksi, and associate regional medical director, Dr. Bredeman.  [Id., ECF No. 47-1 at ¶ 10]  During the call, Dr. Kosierwoski explained that large B-cell lymphoma "had a very low recurrence rate after two years in remission and … Harris had a low risk of recurrence of cancer."  [ECF No. 47-1 at ¶ 11]  The doctors agreed to a treatment plan pursuant to which doctors at the cancer clinic would monitor Harris.  [Id. at ¶ 12]

At his cancer clinic appointment with Dr. Zakroff on August 16, 2018, Harris reported several falls, and Dr. Zakroff renewed Harris's gabapentin and ordered Harris hip x-rays[6] and a walker.  [ECF No. 48 at 269]  In November 2018, Dr. Zakroff increased Harris's gabapentin, prescribed propranolol for headaches,[7] and assured Harris that his 2016 CT scan and 2017 MRI showed no evidence of brain cancer.  [Id. at 483, 487]  Dr. Zakroff saw Harris in the pain clinic

---

[5] The x-rays revealed "mild lumbar rotoscoliosis" and "changes of the anterior vertebral body margin L4 may be associated with underlying hemangioma.  Sequela from old injury may be another consideration."  [Id. at 259]
[6] The x-rays showed "mild hypertrophic changes superior acetabular margin."  [ECF No. 48 at 272]
[7] A nurse discontinued the propranolol later that month because Harris reported it "makes him feel bad."  [Id. at 500]

the following month and prescribed naproxen and ordered a back brace and chest and abdominal x-rays.[8]  [Id. at 504-505]

Dr. Zakroff treated Harris in the pain clinic on January 15, 2019, where he complained of bilateral hip pain, daily headaches, and chronic low back pain.  [Id. at 547]  Dr. Zakroff noted that she "asked patient 3 times if he would like to try an[y] additional daily med for pain relief or pain-off for headaches.  He refused stating he does not want any more meds because of potential side effects."  [Id. at 548-49]  Dr. Zakroff continued Harris's acetaminophen.  [Id.]

When Dr. Zakroff examined Harris in the cancer clinic on February 4, 2019, Harris informed her that "he knows he is in remission, but that he has pain in rt side of abdomen and hip, sometimes numb that has been there for months or years."  [Id. at 542]  He also continued to experience daily headaches but "he does not want to try any other medications[.]"  [Id.]  Dr. Zakroff renewed Harris's gabapentin, naproxen, and acetaminophen.  [Id. at 542-49]

Harris filed a pro se complaint against Corizon seeking injunctive and monetary relief under 42 U.S.C. § 1983, which counsel later amended.[9]  [ECF Nos. 1 & 20]  In the amended complaint, Harris alleged that Corizon violated the Eighth Amendment by acting with deliberate indifference to his serious medical needs when they "provided nothing more than cursory medical care and medication" and "den[ied] [Harris] care for his cancer and related medical conditions."  [ECF No. 20]  More specifically, Harris claimed that Corizon was deliberately indifferent to "growths" on the base of his skull and on his chest, back pain, "gout [] in both legs," "neuropathy in both feet with attendant pain [and] swelling," "continued bouts of dizziness

---

[8] The chest x-rays were normal, while the abdominal x-rays showed a "nonspecific GI air pattern."  [ECF No. 506-07]

[9] Harris also named Defendants "John Does" and "Jane Does," doctors and nurses at CJC and ERDCC, individually and in their official capacity as employees of Corizon.  The Court dismissed the Doe defendants pursuant to Fed. R. Civ. P. 4(m) for failure to serve process within ninety days of filing the complaint.  [ECF No. 35]

6

and loss of memory," and "concerns [about] his previously-implanted IVC filter." [Id.] Harris further alleged that Corizon denied Harris appropriate medical care "pursuant to a pattern, practice, policy, procedure, custom or regulation established and implemented by Defendants[.]" [Id.]

Corizon denies the allegations and moves for summary judgment arguing that the undisputed evidence shows that Harris received "appropriate and timely care for his conditions" and, therefore, Corizon was not deliberately indifferent to Harris's serious medical needs. [ECF No. 46] Harris counters that material factual disputes preclude summary judgment. [ECF No. 56]

## II. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record]...which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant does so, the non-movant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." Id. at 324 (quotation marks omitted).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). The court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Credibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

### III.    Discussion

Corizon moves for summary judgment on Harris's claim that its deliberate indifference to Harris's serious medical needs violated his rights under the Eighth Amendment. More specifically, Corizon asserts that the undisputed evidence establishes that Corizon "properly and regularly" addressed Harris's complaints of chronic pain and possible recurrence of cancer. [ECF No. 49 at 7]  Finally, Corizon asserts that Harris failed to demonstrate that "a policy, custom or official action of Corizon caused him any injury." [Id. at 9]

In response, Harris asserts that summary judgment is inappropriate because whether Corizon's conduct constituted deliberate indifference is a question of fact. [ECF No. 56]  Harris maintains that his medical records demonstrate that Corizon denied him "medical treatment for subjective and ongoing medical problems as well as … for the possibility of a new diagnosis of cancer[.]" [Id. at 5]

Deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish deliberate indifference, a plaintiff must show that (1) he suffered an objectively serious medical need and (2) the defendants knew of the need but deliberately disregarded it. Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004).  "Deliberate indifference is more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a

8

constitutional violation." Fourte v. Faulkner Cty., Ark., 746 F.3d 384, 387 (8th Cir. 2014) (internal quotations and citations omitted).

Harris's deliberate indifference claim against Corizon is based on the treatment provided by individual doctors and nurses employed by Corizon. In a section 1983 action, however, a plaintiff may not rely on the doctrine of respondeat superior. Rogers v. King, 885 F.3d 1118, 1122 (8th Cir. 2018); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir.1995). Where, as here, the defendant is a corporation acting under color of state law, a plaintiff must establish the existence of "a policy, custom or action by those who represent official policy that inflicts actionable injury under § 1983." Foster v. Lombardi, No. 1:12-CV-116 JAR, 2014 WL 636042, at *9 (E.D. Mo. Feb. 18, 2014). See also Southworth v. Missouri Dep't of Corrections, 258 Fed. Appx. 917, 917-18 (8th Cir. 2007) ("To defeat [the prison's medical contractor's] summary judgment motion, [the plaintiff] had to create trialworthy issues as to whether there was a [] policy, custom, or action by those who represent official [] policy, that inflicted an Eighth Amendment injury."); Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006) ("To support a claim against [a prison's medical contractor] under section 1983, [a plaintiff] must show that there was a policy, custom, or official action that inflicted an actionable injury.").

The Eighth Circuit has "observed an important distinction between claims based on official policies and claims based on customs." Jenkins v. Cnty. of Hennepin, Minn., 557 F.3d 628, 633 (8th Cir. 2009). To prevail on an Eighth Amendment claim based on an official policy, a plaintiff must demonstrate (1) "a deliberate choice of a guiding principle or procedure made by the … official who has final authority regarding such matters" that (2) "was 'the moving force' behind the harm that [the plaintiff] suffered." Id. (quoting Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999)). To demonstrate the existence of an unconstitutional custom, a plaintiff

9

must establish: (1) the existence of a "continuing, widespread, persistent pattern of unconstitutional misconduct"; and (2) that "policymakers were deliberately indifferent to the misconduct or that they tacitly authorized it." Id. at 634 (quoting Mettler, 165 F.3d at 1204).

In his amended complaint, Harris generally alleges that Corizon denied him "care for his cancer and related medical conditions" "pursuant to a pattern, practice, policy, procedure, custom or regulation established and implemented by Defendant[.]" [ECF No. 20 at ¶ 18]  However, Harris did not identify an officially accepted guiding principle or procedure that was constitutionally inadequate. See Jenkins, 557 F.3d at 633.  Furthermore, nothing in the record suggests that Corizon instituted policies or procedures promoting deliberate indifference to inmates' cancer history, chronic pain, or other medical needs. See, e.g., Clay v. Morgan, 79 Fed.Appx. 940, 941 (8th Cir. 2003) (affirming summary judgment for defendant because the plaintiff provided no evidence of "any policies or customs concerning the delay or denial of treatment to inmates with diseases like MS"); Foster, 2014 WL 636042, at *9 (the plaintiff provided no evidence of specific company policies that mandated the decisions or actions of its doctors and nurses); Rothman v. Lombardi, 4:11-CV-639 CEJ, 2013 WL 4877301, at *6 (E.D. Mo. Sept. 11, 2013); (plaintiff did not "point[] to or provide[] any evidence of a deliberate official policy instituted by Corizon that promotes a deliberate indifference to the medical needs of prisoners"); L.B. v. Mo. Dep't of Corr., 4:08-CV-2000 CDP, 2010 WL 4813791, at *4 (E.D. Mo. Nov. 19, 2010) (the plaintiff did not establish "a jury question as to whether there was a … policy or custom of [the defendant] denying appropriate cardiac care to inmates who exhibited [the plaintiff's] signs and symptoms but no pain.").  On the contrary, the undisputed evidence of Harris's regular and comprehensive medical treatment, including his referral to the cancer and chronic pain clinics when he transferred from the CJC to the ERDCC, undermines the existence

of such a policy. See e.g., Foster, 2014 WL 636042, at *9; Williams v. Morrison, No. 2:10-CV-34 ERW, 2012 WL 3283401, at *6 (E.D. Mo. Aug. 10, 2012).

In regard to an official custom, Plaintiff states in his response to Corizon's motion for summary judgment that Corizon's provision of a CT-guided biopsy instead of an ultrasound-guided biopsy was "evidence of a consistent and pervasive pattern of denying proper care to [Harris]." [ECF No. 56]  In reply, Corizon provides Harris's medical records from Fall 2019, which reflect that Dr. Zakroff requested a referral for Harris to outside "interventional radiology" for an ultrasound-guided biopsy after a CT revealed a mass on Harris's right lung. [ECF No. 60-1 at 2]  Corizon approved Dr. Zakroff's request but, on the advice of outside radiologists, changed the referral to "CT guided biopsy of lung mass."[10]  [Id. at 5]  Given that Corizon provided the intervention recommended by outside specialists, the CT-guided biopsy did not constitute deliberate indifference, much less evidence that Corizon had a "consistent and pervasive pattern" of denying Harris constitutionally required care.

Harris neither alleged facts nor presented evidence suggesting that Corizon had a "continuing, widespread, persistent pattern" of deliberate indifference to him serious medical needs.  See, e.g., Jenkins, 557 F.3d at 634; Clay, 79 Fed. Appx. at 941.  On the contrary, the record demonstrates that Harris received timely medical treatment, saw doctors and other medical professionals regularly, had routine blood tests to monitor for the recurrence of cancer, and saw outside specialists and underwent medical imaging as recommended by his treating physicians.  See, e.g., Maybin v. Corizon Healthcare, 4:16-CV-525 CEJ, 2017 WL 3333891, at *14 (E.D. Mo. Aug. 4, 2017); Foster, 2014 WL 636042, at *9.  Indeed, Harris acknowledged in his deposition that Corizon "was doing my blood work constantly" and he saw Dr. Fuentes

---

[10] In September 2019, Harris underwent the CT-guided biopsy, which detected "no monotypic B-cell or aberrant T-cell populations[.]" [Id. at 23]

11

"[r]egularly, like maybe sometimes two, three times a month" while he was at the CJC. Because no facts support the existence of a Corizon policy or custom to deny medical care, the Court grants Corizon summary judgment.

### IV.     Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Corizon's motion for summary judgment [ECF No. 46] is **GRANTED**.

A separate judgment in accordance with this Order and Memorandum is entered this same date.

 

*Patricia L. Cohen*

_____

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of September, 2020